IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-00626-WDM-KLM


MARCOS GARCIA FLORES,

      Applicant,

v.

MARK BROADDUS, Warden BVCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

Before the Court is an **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** [Docket No. 4; Filed March 29, 2007] filed by Marcos Garcia Flores ("Applicant"). Respondents filed an Answer to Application for Writ of Habeas Corpus on September 18, 2007 [Docket No. 26] and Applicant filed a Reply [Docket No. 27; Filed July 11, 2008]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R. 72.1C, the Application has been referred to this Court for recommendation.

The matter has been fully briefed and is ripe for resolution. The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises.  For reasons set forth below, the Court recommends that the Application be **DENIED**.

I. Background and Procedural History

Applicant is appealing his convictions for first degree assault and sexual assault,
in violation of Colorado Rev. Stat. § 18-3-201(1)(c) and § 18-3-402(1)(a)(& (5), and a crime
of violence count pursuant to Colo. Rev. Stat. §16-11-309(1)(c) & 2(b)  *Record* v. 1 at 109-
110.  Applicant was convicted by jury verdict in Pitkin County District Court, Colorado and
sentenced to a 40-year term of imprisonment.  *Id.* at 429.  Applicant is currently in the
custody of the Colorado Department of Corrections at the Buena Vista Correctional Facility
in Buena Vista, Colorado.

The following facts were established at trial and led to Applicant's convictions: on
July 21, 2001, MM went out to Little Annie's bar in Aspen, Colorado with a few of her
friends.  *Record* v. VIII at 103.[1]  While at the bar, she noticed a man she did not recognize,
later identified as Marco Garcia-Flores, sitting alone and not talking to anyone.  *Id.* at 106,
183.[2]  At 2:00 a.m, when the bar closed for the evening, she left and intended to head to
a bus stop.  *Id.* at 108.  Flores was standing to her left when she came outside the bar, so
she headed in the opposite direction from the bus stop.  *Id.*  As MM walked away from the
bar she noticed Flores following her and walking his bicycle.  *Id.* at 109.  Applicant called
out her name and she began walking faster.  *Id.* at 109-10.

Flores caught up with her in an alley and punched her in the face.  *Id.* at 114.
He said to her, "I'm going to kill you if you don't have sex with me," and used similar vulgar

---

[1] The victim is only identified by her initials in the trial transcript.

[2] MM identified Flores as her attacker from a photo array and at trial.  *Id.* at 138-
141.

expressions.  *Id.* at 117.   Flores punched her in the face five or six times.  *Id.* at 118. He

also put his hand around her throat and pounded her head on the pavement.  *Id.* at 119.

She tried to fight back, but the more she did so, the more Flores hurt her.  *Id.* at 120.  In

order to get him to stop, she ceased resisting him, and Flores forcibly penetrated her.  *Id.*

at 121-22.  He then rode away on his bicycle.  *Id.* at 123.

    MM began screaming and ran out of the alley and looked for people on the street.

*Id.* at 124.  She approached two girls and told them she had just been raped and that the

man threatened to kill her if she did not have sex with him.  *Record* v. VII at 55; v. VIII at

125.   The bystanders noticed that one of MM's eyes was swollen shut, her nose was

bleeding,  and her arms were scraped and bloody.  *Id.* at 55, 58.  The bystanders called

911 and an ambulance and police officers arrived soon thereafter to take MM to the

hospital.  *Id.* at 58-59. The officers examined MM, scraping under her nails and

administering oral and  vaginal swabs. *Id.* v. VIII at 126.  A DNA test later revealed that the

semen on MM belonged to Flores.  *Id.* v. IX at 384-85.

    As a result of the attack, MM suffered a number of physical injuries.  She had a

swollen eye, a broken nose, a bruised eardrum, and abrasions and tenderness in her

vaginal area.  *Id.* V. VIII at 259-65.  Because she had been choked and her head banged

on the concrete, MM's injuries involved a substantial risk of death.  *Id.* at 266-67.  The

injuries carried a substantial risk of protracted loss or impairment of the function of the body

because the choking could have caused brain injury and her head hitting the ground could

have caused bleeding inside the brain, which could be fatal or permanently disabling . *Id.*

at 267.  The eye and eardrum injuries as well could have resulted in permanent damage. *Id.* at 268.  The break to the victim's nose was also a serious bodily injury *Id.* at 268.

Applicant appealed his convictions to the Colorado Court of Appeals, raising the following grounds for relief: (1) the trial court denied him a fair trial by denying his motion for change of venue based on pretrial publicity; (2) the admission of his statements to the police violated *Miranda v. Arizona*; (3) and he was entitled to a jury instruction on the lesser- included offenses of second and third degree assault. *Id.* at 3.  His convictions were affirmed by  the Court of Appeals in *People v. Garcia-Flores*, No. 02CA1518 (Colo. App. Mar. 31, 2005)(*Garcia-Flores).*  Applicant's petition for writ of certiorari was denied by the Colorado Supreme Court on August 1, 2005.  *Application* [#4]., Ex., Order of Court.

Applicant filed a motion for relief pursuant to Colorado Rule of Criminal Procedure 35(c) in Pitkin County District Court on October 7, 2005.  *Record* 01CR46 v. II, *Motion for Relief Pursuant to Crim. P. 35(c) and Combined Motion for Appointment of Counsel.*  He alleged that he was denied his right to conflict-free counsel and was not advised of his right to proceed *pro se.  Id.*

On April 18, 2006, Applicant filed an additional motion for post-conviction relief in Pitkin County District Court raising two new grounds for relief: (1) ineffective assistance of trial counsel; and (2) the district court and state officials failed to inform Applicant of his right to seek assistance from his native country's representative.  *Application* [#4] at 4.  On July 31, 2006, Applicant filed a Motion for Judgment on Postconviction Motion in Pitkin County District Court.  *Record*, v. II.  Applicant then filed a petition for writ of mandamus in

the Colorado Supreme Court on December 12, 2006 requesting that the Pitkin County

Court be ordered to rule on his post-conviction motion. *Id.*   The Colorado Supreme Court

denied the petition on February 7, 2007. *Id.*

The Application for a Writ of Habeas Corpus was filed in this Court on March 29,

2007.  Applicant raises the following claims for relief:

| | |
|---|---|
| *Claim One* | The trial court erred in denying Applicant's request for change of venue |
| *Claim Two* | Applicant's statements to the police should not have been admitted at trial because there was not a certified interpreter present and his *Miranda* waiver was not knowing and intelligent |
| *Claim Three* | The trial court erred in not instructing the jury on lesser included offenses |
| *Claim Four* | Applicant did not receive the effective assistance of conflict-free counsel at trial |
| *Claim Five* | State officials failed to advise Applicant of his right to seek help from his "country representatives" |

*Application* [#4] at 5-16.

On April 20, 2007, this Court ordered Applicant to show cause why his Application should

not be dismissed because it included unexhausted claims.  *Order to Show Cause* [#6].

In response, Applicant moved to dismiss claims Four and Five.  *Answer to Order to Show*

*Cause* [#7].  Consequently, the Court discharged the Order to Show Cause.  *Order* [#8].

Three claims remain for resolution.

Applicant filed another motion for post-conviction relief in Pitkin County District Court

on February 6, 2009, raising the following grounds for relief (1) ineffective assistance of

counsel; (2) the prosecutor failed to disclose exculpatory evidence; (3) the trial court erred

in enhancing Applicant's sentence without making the requisite findings; (4) his aggravated

sentences are unconstitutional; and (5) the sentences for first degree assault and sexual

assault should have merged.  *Id.*   The Pitkin County District Court has not issued a ruling

on Applicant's motion.

## II.      Analysis

### A.      Applicant's Status

Applicant is proceeding *pro se.*  Therefore, the Court must construe his Application

liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106,

1110 (10th Cir. 1991).   In this regard, the Court should carefully weigh the need for

Applicant to present constitutional claims against any procedural defects caused by

Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).

However, the Court is not the nonmoving party's advocate and must nevertheless deny an

application that is based on vague or conclusory allegations.  *Hall*, 935 F.2d at 1110.

### B.      Standard of Review

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be

granted only if it is based on an underlying state court decision that (1) is "contrary to . . .

clearly established Federal law, as determined by the Supreme Court, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999). A decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent. *Williams*, 529 U.S. at 406. A decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue. *Id.* at 409. In addition, pursuant to this Court's habeas review, a presumption of correctness exists regarding trial and appellate court findings of fact. *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982). As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).

C.  Change of Venue

Prior to trial, Applicant moved for a change of venue based on pretrial publicity. *Record* v. 1 at 187. After an evidentiary hearing, the trial court denied the motion for change of venue, finding that the publicity in this case "has not reached a level requiring a change of venue in order for [Applicant] to receive a fair trial." *Id.* at 215. The Colorado Court of Appeals ruled that the trial court did not abuse its discretion in denying the motion for a change of venue. *Garcia-Flores*, at 6.

To obtain habeas relief based on a state trial court's denial of a change of venue,

an applicant "must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved 'such a probability that prejudice will result that it is deemed inherently lacking in due process.'" *Breechen v. Reynolds*, 41 F.3d 1343, 1350 (10th Cir. 1994) (quoting *Estes v. Texas*, 381 U.S. 532, 542-43 (1965)). A trial court's decision denying a change of venue is reviewed for an abuse of discretion. *Stafford v. Saffle*, 34 F.3d 1557, 1565 (10th Cir. 1994). The trial court's decision is entitled to a presumption of correctness and should not be overturned in the absence of manifest error. *Mayes v. Gibson*, 210 F.3d 1284, 1291 (10th Cir. 2000).

The habeas petitioner has the burden of establishing that prejudice based on pretrial publicity should be presumed. *Hale v. Gibson*, 227 F.3d 1298, 1332 (10th Cir. 2002). Applicant must "establish that an irrepressibly hostile attitude pervaded the community." *Stafford*, 34 F.3d at 1567. "Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." *Id.* Presumed prejudice is "rarely invoked and only in extreme circumstances," *id.,* such as where the news media creates either a circus atmosphere in the courtroom or a lynch mob mentality that would prevent a fair trial. *Hale*, 227 F.3d at 1332.

In this case, the crime was committed and the trial held in Aspen, Colorado. *Answer,* Ex. D at 3. At the hearing on the motion for a change of venue, Applicant presented the testimony of an investigator with the Public Defender's Office. *Record* v. 3

at 6.[3]   The investigator had compiled eighteen articles about the case in two local

newspapers, the Aspen Times and the Aspen Daily News.   *Id.* at 8; *Answer,* Ex. D at 3.

The investigator presented several articles that contained the details of the offense

and mentioned Applicant as a suspect. *Record* v. 3 at 9-11.  The newspaper articles also

contained information about the investigation of the crime, including police allegations that

Applicant had lied about his name when he was arrested, that the victim of the crime had

identified Applicant as her assailant, that the judge found sufficient evidence to go to trial,

and that Applicant had pled not guilty to the charges. *Id.* at 12-15.

The investigator also testified that he did some monitoring of local radio coverage.

Based on his observations, he asserted that all of the radio stations used the case as lead

stories "off and on" for several weeks following the commission of the crime.  *Id.* at 16.

None of the articles presented by the investigator were published within three months

of the trial.  *Id.* at 18.  Two of the articles were about the newspaper's requests to have the

arrest and the warrant affidavits unsealed. *Id.* at 14, 25, 26.  The investigator acknowledged

that perhaps half of the articles directly discussed the facts of the offense and some not at

all.  *Id.* at 26-28.  There were no members of the public in the courtroom during the change

of venue hearing and only one member of the press.  *Id.* at 19-20.

In order for the reviewing court to presume that "pretrial publicity so permeated the

community as to render impossible the seating of an impartial jury, the court must find that

the publicity in essence displaced the judicial process" and denied defendant his right to a

---

[3] The record on appeal contains Volume III, a transcript of a March 18, 2002 hearing, and Volume 3, the motions hearing on February 13, 2002.

fair trial. *United States v. McVeigh*, 153 F.3d 1166, 1181 (10th Cir. 1998). The evidence submitted by Applicant is not sufficient to show that prejudice based on pretrial publicity should be presumed. The evidence does not demonstrate that pretrial publicity created a "media frenzy" or a "circus atmosphere." The newspaper articles submitted by Applicant merely recite the basic facts about the offense and the police investigation.

A jury's exposure to a "defendant's prior convictions or to news accounts of the crime with which he is charged" cannot alone demonstrate that a defendant has been denied a fair trial. *Murphy v. Florida,* 421 U.S. 794, 799 (1975). The mere fact of unfavorable publicity does not by itself raise a presumption of prejudice. *United States v. Cooper*, 464 F.2d 648, 655 (10th Cir. 1972). As the Colorado Court of Appeals correctly observed:

> In our view, the eighteen items of news coverage could not be characterized as "massive"; nor could the publicity be characterized as "pervasive," inasmuch as it had diminished to nothing or nearly nothing by the time of the motions hearing; nor could it be characterized as "prejudicial," inasmuch as it was not vituperative in nature ... and no attempt was made to demonize defendant through the media.

*Answer*, Ex. D at 4-5.

Applicant has failed to meet his burden of showing that an irrepressibly hostile attitude pervaded the community such that prejudice could be presumed.

Applicant also contends that the voir dire proceedings showed actual prejudice caused by the pretrial publicity because "more than fifty percent of the veniremen had knowledge of the facts of the case" and "so many of the potential jurors were concerned about the case, and knew of it ..." *Application* [#4] at 5-6. The Court reviews an allegation of actual prejudice by examining the totality of the circumstances. *Stafford*, 34 F.3d at 1567.

"The trial court has broad discretion in gauging the effects of allegedly prejudicial publicity and in taking measures to insure a fair trial." *United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991).

Actual prejudice is present when the voir dire shows that "the effect of pretrial publicity ... is so substantial as to taint the entire jury pool." *Goss v. Nelson*, 439 F.3d 621, 628 (10th Cir. 2006). A party seeking a change of venue based on actual prejudice must demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." *Murphy*, 421 U.S. at 800 (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)). "[T]he voir dire testimony and the record of publicity [ ] [must] reveal the kind of wave of public passion that would have made a fair trial unlikely by the jury that was empaneled as a whole." *Patton v. Yount*, 467 U.S. 1025, 1040 (1984).

There were nineteen prospective jurors questioned during voir dire in Applicant's case. *Answer*, Ex. D at 5. Eleven of those prospective jurors stated that they had heard about the case. *Record* v. XI at 29, 110, 112-13, 120-21, 127-28. All of the eleven jurors stated that their knowledge of the case would have no effect on their determination of Applicant's guilt. *Id.* at 29-30, 110, 112-13, 120-21, 127-28. Applicant's counsel did not challenge any member of the jury panel for cause. *Id.* at 77.

Applicant has not made any specific allegations that demonstrate he suffered actual prejudice from the pretrial publicity, nor shown how the voir dire revealed that the jury was not impartial. The reviewing court is to give due deference to jurors' declarations of impartiality and the trial court's credibility determinations that those declarations are sincere.

*Mu'Min v. Virginia*, 500 U.S. 415, 420-21 (1991).  The trial court here questioned each juror individually about his or her ability to set aside the possible effects of the pretrial publicity. Each juror declared that he or she could be impartial and decide the case fairly.  In sum, none of the circumstances in the jury selection process even hint that the jurors were affected by the pretrial publicity in this case.  Therefore, the trial court did not abuse its discretion in denying Applicant's motion for a change of venue and the Colorado Court of Appeals affirmance of that decision was not an unreasonable application of federal law.

D.  Admission of Statements

In Claim Two of his Application, Applicant contends that the statements he made to the police should not have been admitted at trial because (1) the police officers were not certified interpreters; and (2) his *Miranda* waiver was not knowing and intelligent. *Application* [#4] at 6.  Respondents concede that the *Miranda* claim is exhausted, but argue that the certified interpreter issue is not properly exhausted because it rests solely on state law.

In order to meet the exhaustion requirement, the claim advanced by the federal habeas petitioner must have been submitted to the state courts as one arising under the federal constitution.  *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).  The decision of the last state court to which the petitioner submitted his claims must fairly appear to rest on issues of federal law or to be interwoven with federal law.  *Id.*  In *Duncan v. Henry*, 513 U.S. 364, 366 (1995), the Supreme Court recognized that an applicant must alert the state court to the federal constitutional nature of his claims in order to properly exhaust his claims. That

is, "mere similarity of claims is insufficient to exhaust," and "[i]f a habeas petitioner wishes to claim that [a ruling] at a state court denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id.* "[T]he substance of a federal habeas corpus claim must first be presented to the state courts in a manner which alerts the state courts to the fact that the defendant is raising federal constitutional issues and not simply issues of state law." *Huynh v. Archuleta*, No. 06-cv-02118-CMA-CBS, 2009 WL 798846, at *4 (D. Colo. Mar. 24, 2009).

In his direct appeal, Applicant contended that his statements to law enforcement officials should not have been admitted into evidence at trial because the officials were not certified Spanish interpreters. *Answer* [#26], Ex. A. at 8-19.  In support of his claim, Applicant cited Colorado evidentiary law and state professional conduct rules. *Id.*  He did not rely on any federal law or mention the United State constitution.

Because Applicant did not raise this claim in state court as one concerning federal constitutional rights, he has not exhausted the claim. This Court will only consider whether Applicant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

Prior to trial, Applicant moved to suppress the statements he made to the police after his arrest. *Record* v. 1 at 182.  The trial court held a hearing on Applicant's motion to suppress statements. *Record*  v. 3 at 38. The testimony at the hearing revealed the following: after Applicant's arrest in the morning of July 19, 2001, Jim Crowley, a detective with the Aspen Police Department, and Dave Storm, an agent with the Drug Enforcement Administration ("DEA"), interviewed Applicant at the Pitkin County Jail.  *Id.* v. 3 at 41, 44.

Agent Storm was present because he was fluent in Spanish. *Id.* at 41. At the jail, Applicant was verbally advised of his *Miranda* rights in Spanish and was also shown the DEA's *Miranda* card which had a written version of his rights in Spanish. *Id.* at 46, 91-92.

Agent Storm advised Applicant of each statement on the *Miranda* card in Spanish. *Id.* at 95-96. Applicant indicated to Agent Storm that he could read the card. *Id.* at 103. Applicant signed the DEA card, acknowledging that he understood his *Miranda* rights. *Id.* at 48-49, 97. Flores told the officers that he was willing to waive his rights. *Id.* at 79. Agent Storm asked Applicant questions in Spanish. *Id.* at 99. At no point did the Applicant indicate to the officers that he wanted to rescind his *Miranda* waiver and cease answering their questions. *Id.* at 97.

Applicant was also interviewed in the evening of July 19, 2001 by Deputy Brad Gibson and Deputy DiSalvo of the Pitkin County Sheriff's Office. *Id.* at 115, 122. Deputy Gibson was conversant in the Spanish language. He learned to speak Spanish while he was employed in Chile for several years. *Id.* at 118. He also spoke Spanish at home because his wife is Chilean. *Id.* at 119-20.

A *Miranda* advisement form in Spanish was furnished to Applicant prior to questioning by Deputy Gibson. *Id.* at 122. Applicant was also advised of his rights verbally by Deputy Gibson. *Id.* at 123. Applicant acknowledged that he understood his rights. *Id.* at 124. Applicant was then questioned in Spanish by Deputy Gibson. Applicant never indicated to Deputy Gibson that he wanted to cease the questioning. *Id.* at 130.

The statements Applicant made to Agent Storm and Deputy Gibson were introduced

into evidence at Applicant's trial.  *Id.* v. VIII at 290-95, 312-16.  As the Colorado Court of

Appeals noted, the record does not contain a transcript of the parties' arguments or the trial

court's ruling on the motion to suppress.  *Garcia-Flores,* at 7.  The appeals court assessed

Applicant's claim under the plain error standard and ruled that the admission of the

Applicant's statements to the police officers did not warrant reversal. *Id.* at 10-11.

Prior to initiating a custodial interrogation, law enforcement personnel must advise

the suspect of the possible use of his statements against him and his right to have counsel

present during the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 468-71 (1966). *Miranda*

rights may be waived, but the waiver must be voluntary, knowing, and intelligent. *Id.* at 444.

A waiver is knowing and intelligent if it is made with full awareness of both the nature of the

right being abandoned and the consequences of the decision to abandon it.  *Moran v.*

*Burbine*, 475 U.S. 412, 421 (1986).  In determining whether a waiver is valid, the court

should consider the totality of the circumstances. *Colorado v. Spring*, 479 U.S. 564, 573

(1987).

Applicant asserts that his waiver of *Miranda* rights was not knowing and intelligent

because the officers did not have adequate Spanish language skills.  Applicant alleges that

the officers could not understand or properly convey the *Miranda* warnings in Spanish and

did not comprehend Applicant's answers during interrogation.  *Application* [#4] at 8-12.

*Miranda* warnings given in a language which the suspect cannot comprehend do not

convey the substance of the suspect's rights.  *United States v. Alarcon*, 95 Fed Appx. 954,

956 (10th Cir. 2004); *see also United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir.

1990) (language barrier may inhibit suspect's ability to voluntarily waive his *Miranda* rights).

However, a translation of *Miranda* rights need not be perfect as long as it effectively conveys

to the suspect the nature of his rights. *United States v. Bustillos-Munoz*, 235 F.3d 505, 517

(10th Cir. 2000); *United States v. Hernandez*, 93 F.3d 1493, 1502 (10th Cir. 1996).

Under the totality of the circumstances, I find that Applicant's waiver of his *Miranda* rights

was voluntary, knowing, and intelligent. The testimony at the suppression hearing

established that the officers had sufficient knowledge and experience in the Spanish

language to effectively communicate with Applicant. The officers gave Applicant his

*Miranda* warnings in Spanish both orally and verbally. At no time during the interrogation

did Applicant tell the officers that he did not understand his rights. Therefore, the trial court

did not commit error in allowing the admission of Applicant's statements to law enforcement

officials.

        E.  Lesser Included Offense Instruction

      Applicant asserts the trial court erred in not instructing the jury on the lesser-included

offenses of second and third degree assault. *Application* [#4] at 8. On direct appeal,

Applicant argued that the trial court's failure to instruct the jury on lesser-included offenses

violated Colorado law. *Answer* [#26], Ex. A at 17-19. In denying Applicant relief on this

claim, the Colorado Court of Appeals relied on Colorado law. *Garcia-Flores,* at 9-10. The

appeals court affirmed the trial court's decision denying a lesser-included offense instruction,

concluding that there was not "any evidentiary basis upon which a rational fact finder could

conclude that [Applicant] was guilty not of first degree assault, but of either second or third

degree assault." *Id.* at 10.

Respondents argue that Applicant has not properly exhausted this claim because he

did not raise it in the state court as a violation of his federal constitutional rights. *Answer*

[#26] at 10. "The exhaustion doctrine seeks to afford the state courts a meaningful

opportunity to consider allegations of legal error without interference from the federal

judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).  The state and federal courts have

concurrent power to "guard and protect rights secured by the Constitution."  *Rose v. Lundy*,

455 U.S. 509, 518 (1982) (citation omitted).  "Before a federal court may grant habeas relief

to a state prisoner, the prisoner must exhaust his remedies in state court. In other words,

the state prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526

U.S. 838, 842 (1999).

In order to satisfy the exhaustion requirement, the claim must be presented under

federal law not only to the trial court, but also the state's intermediate court as well as its

supreme court. *Id.* at 845-87.  The petitioner must have invoked "one complete round of the

state appellate review process." *Id.* at 845.

As stated above, in order to meet the exhaustion requirement, the claim advanced

by the federal habeas petitioner must have been submitted to the state courts as one arising

under the federal constitution.  *Coleman*, 501 U.S. at 735.  The decision of the last state

court to which the petitioner submitted his claims must fairly appear to rest on issues of

federal law or to be interwoven with federal law. *Id.*  Because Applicant did not raise the

instruction issue as one arising under the federal constitution and the Colorado Court of Appeals' decision did not rest on federal law, Applicant has failed to exhaust his remedies as to this claim.

Even if Applicant had exhausted the lesser-included instruction claim, he would not prevail on the merits. The Supreme Court has never held that a defendant has a constitutional right to an instruction on lesser-included offenses in non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980). In fact, the Tenth Circuit has established a "rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (quoting *Chavez v. Kerby*, 848 F.2d 1101, 1103 (10th Cir. 1988)). However, a jury instruction error that is a violation of state law can amount to a deprivation of due process. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). "[I]n order to benefit from the rule in *Hicks*, a habeas petitioner must show that the alleged failure to apply state law was 'arbitrary in the constitutional sense.'" *Dickson v. Franklin*, 130 Fed. Appx. 259, 264 (10th Cir. Apr. 27, 2005) (unpublished decision) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999)). Moreover, "the deprivation occasioned by the state's failure to follow its own law . . . must shock the judicial conscience." *Aycox*, 196 F.3d at 1180.

Even if this Court were obligated to consider whether the failure to give the jury an instruction for second and third degree assault amounted to a due process violation pursuant to *Hicks*, both the state trial court and the Colorado Court of Appeals determined that there was insufficient evidence to instruct the jury on those offenses. *Garcia-Flores,* at

12.   Such factual determinations are presumed to be correct and can only be rebutted by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  Applicant fails to set forth clear and convincing evidence that a second and third degree assault instruction should have been given.  In fact, Applicant has offered no evidence to support his claim in this case and did not do so on direct appeal in state court.

The Colorado Court of Appeals noted that pursuant to state law, a defendant is only entitled to an instruction on a lesser included offense "as long as there is a rational basis in the evidence to support an acquittal of the greater offense and a conviction of the lesser offense." *Garcia-Flores,* at 9.  It is not enough to suggest there is a "mere chance" the jury may reject testimony put into evidence.  *People v. Ramirez*, 18 P.3d  822, 827 (Colo.  App. 2000); *see Apodaca v. People*, 712 P.2d 467, 474-75 (Colo. 1985).  Pursuant to Colo. Rev. Stat. 18-3-202(c), a person commits first degree assault when "[u]nder circumstances manifesting extreme indifference to the value of human life, he knowingly engages in conduct which creates a grave risk of death to another person, and thereby causes serious bodily injury to any person."   Considering the evidence presented at trial detailing the extensive physical injuries suffered by the victim at the hands of the Applicant, *see Record* v. VIII at 259-268, it was not error to conclude that there was no rational basis for the jury to acquit Applicant of the charge of first degree assault.

In summary, the Colorado Court of Appeals held, and I agree, that the failure to instruct the jury on the lesser-included offenses was not a violation of state law.

III. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254. No evidentiary hearing is required. Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that this case be dismissed with prejudice.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 8, 2009

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge